UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS E. CAUGHRAN,<br><br>　　　　Plaintiff<br><br>　　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. CV 14-08096 (KLS)<br><br>**MEMORANDUM OPINION AND ORDER** |

On October 20, 2014, Plaintiff, Dennis E. Caughran ("Plaintiff"), filed a Complaint seeking judicial review of a denial of his application for a period of disability and disability insurance benefits ("benefits".) (Complaint, ECF No. 1.) On August 12, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Consents, ECF Nos. 15, 17.) On July 2, 2015, the parties filed a Joint Stipulation (Joint Stip. ECF No. 13), whereby Plaintiff seeks reversal of an Administrative Law Judge's ("ALJ") decision to uphold the denial. (Joint Stip. 14, ECF No. 13.) The Court has taken the Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff, who was born on August 31, 1959, alleges disability since March 29, 2011, due to a cerebral vascular accident ("CVA" or "stroke"), chronic high blood pressure, limited mobility, anxiety, sleep apnea, and obesity. (A.R. 29.) Plaintiff's past relevant work experience was as technical leader from 1995 to 2000 in the high tech industry, and as a Chief Executive Officer ("CEO") from 2000 to 2011 in the software development industry.

Plaintiff's application for benefits was denied initially and also upon reconsideration. (Complaint, 2, ECF No. 1.) He timely requested, and received, a hearing before ALJ, Eileen Burlison on April 9, 2013. (A.R. 60.) Plaintiff was represented by counsel and testified before the ALJ at his hearing. (A.R. 58-93.) A vocational expert ("VE") also testified at the hearing. (A.R. 86-91.) Presented with a hypothetical limitation to sedentary work, the VE testified that Plaintiff's past work experience would be "viable job options." (A.R. 86.) However, a further limitation to a low-stress environment—based on Plaintiff's mental impairments—precluded his prior work, although it was sedentary. (A.R. 92.) With a limitation of a low-stress environment, the VE testified that Plaintiff would only be able to perform "unskilled" work in the jobs of "cleaner" and "office helper," which existed in significant numbers in the national economy.[1] (A.R. 87.) The VE also testified that, with the additional limitation to only occasional left-sided reaching, Plaintiff would not be able to perform the jobs of cleaner or office helper, or any other unskilled work. (A.R. 87.)

On June 6, 2013, the ALJ denied Plaintiff's claim, rejecting the limitation to only occasional left-sided reaching. (A.R. 22.) The ALJ's decision became final on July 29, 2014 when the Appeals Council denied a request for review. (A.R. 6.) Plaintiff then filed his complaint in this action.

---

[1] Cleaner is occupational code no. 704.687-010, and Office Helper is occupational code no. 239.567-010.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") for work at a light exertional level with occasional posturals due to his obesity and hypertension; and no more than frequent left-sided reaching, handling, or fingering due to residual slight/mild neurological left-sided deficits; a limitation to a low-stress environment defined as understanding, remembering, and carrying out no more than simple tasks consistent with unskilled work.[2] (A.R. 28.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, [reviewing courts] uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Where the ALJ has properly considered all of the limitations for which there is. record support, the ALJ's RFC determination will not be overturned so long as the ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

---

[2] Only the limitation to frequent left-sided reaching is at issue in this lawsuit.

Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). However, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006).)

## DISCUSSION

Plaintiff challenges the ALJ's decision on the sole basis that she improperly disregarded the examining physician and state agency medical consultant's suggested limitations on the frequency of left-sided reaching.[3] Plaintiff's limitation as to left-sided reaching, when combined with limitations to sedentary and low-stress work environments, is critical to the outcome of this case. *See Carmickle v. Comm'r, S.S.A.*, 533 F.3d 1155, 1164 (9th Cir. 2008). In her RFC determination, the ALJ acknowledged the opinion of Dr. Gerson, D.O., a state agency medical

---

[3] The state agency medical consultant's opinion is discussed in further detail below and appears ultimately inconclusive on the question of whether Plaintiff was limited to occasional or frequent reaching on the left side. The issue of how frequently Plaintiff could perform left-sided reaching is central in this case.

4

consultant specializing in internal medicine, but rejected it to find that Plaintiff could perform frequent left-sided reaching.[4] (A.R. 28.)

On December 14, 2011 Dr. Gerson examined Plaintiff at the request of the Bureau of Disability Adjudication. Dr. Gerson's examination was memorialized in a summary report that began by repeating Plaintiff's statement that "the left arm and leg are still a little weak and they have gotten better since the stroke…[h]e does have difficulty lifting and carrying using the left arm since the stroke…[and] with grabbing or grasping using the left-hand." (A.R. 421-22.) In his report, Dr. Gerson stated that Plaintiff's "[m]otor exam is 4.5/5 in the left arm and 4.5/5 in the left leg, and the remainder of the motor exam is 5/5 bilaterally." (A.R. 424.) Dr. Gerson further noted that Plaintiff "denies any pain in the arms or legs today and the joints are without tenderness with full range of motion," and "was able to point out various pathologies by moving and rotating both arms and hands in various directions, one time with both arms almost fully overhead, without any obvious pain or distress noted." (A.R. 424-26.) Dr. Gerson then opined that Plaintiff is limited to only "occasionally" reaching, "due to left arm weakness, above the shoulder." (A.R. 425-26.) This is the full extent of Dr. Gerson's discussion of Plaintiff's manipulative limitations.[5]

The parties agree that the ALJ accurately summarized Dr. Gerson's conclusion that Plaintiff was "capable of a light lifting level with 4 hours standing/walking, occasional left-sided overhead reaching, frequent fingering/handling, precautionary hazard restrictions, and a limitation to simple tasks due to his reported history of a cerebral vascular accident." (Joint Stip. 3, ECF No. 13.)

---

[4] Although the ALJ's determination contravened Dr. Gerson's opinion on other grounds, Plaintiff's Complaint is limited to the issue of left-sided reaching. Plaintiff also does not challenge the ALJ's adverse credibility determinations.

[5] In his consultative examination, Dr. Gerson made other assessments, including that Caughran could stand and/or walk only (4) hours in an eight-hour workday. However, none of those assessments are at issue in this case.

When an examining physician's opinion is contradicted by another medical opinion in the record, as it was in this case, an ALJ need only provide specific and legitimate reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *compare with Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (describing the ALJ's higher burden of stating clear and convincing reasons that are supported by substantial evidence when rejecting a medical opinion that is uncontradicted). Here, the ALJ rejected Dr. Gerson's opinion because: (1) Dr. Gerson was the only physician who limited Plaintiff to occasional left-sided reaching; (2) Dr. Gerson's assessment was conclusory and not supported by objective clinical medical evidence, and (3) Dr. Gerson's suggested limitation was inconsistent with other record evidence including Plaintiff's own testimony about his limitations and abilities. (A.R. 29-32.)

### 1. **Dr. Gerson was the only doctor who limited Plaintiff to occasional reaching on the left side.**

As an initial matter, Plaintiff's treating physicians never assessed any reaching limitations. When Plaintiff first complained of having a stroke, his primary care physician, Dr. Matuszewski, referred him to a cardiologist, Dr. O'Leary for treatment. (A.R. 378-79.) Dr. O'Leary noted that Plaintiff had a "history of hypertension and left ventricular hypertrophy and has had a significant elevation in his blood pressure recently,"[6] but at no point did she correlate those conditions with any limitations on left-side reaching. (A.R. 383.)

Dr. O'Leary's subsequent progress notes merely listed impairments and symptoms of the average stroke-survivor, but did not include any statements of

---

[6] Caughran's medical "history" is documented his case, through records which date to April 5, 2010 when a cardiac ultrasound report transmitted from Dr. Fuller to referring physician Dr. Matuszewski listed mild atrial enlargement and left ventricular hypertrophy. (A.R. 392.) His hypertension is also documented from as early as 2009. (A.R. 394.) Notably, these findings pre-date Caughran's allegations of stroke in 2011 and 2012.

6

functional significance. (A.R. 438-52; 468-73; 480-89.) On May 19, 2011, Dr. O'Leary referred Plaintiff to a neurologist, Dr. Doyle, for treatment. (A.R. 414.) Following his examination, Dr. Doyle stated that Plaintiff "suffered an apparent stroke about 6 weeks ago resulting in a mild left hemiparesis." (A.R. 415.) Echoing Dr. O'Leary, Dr. Doyle also stated "[h]is symptoms have almost fully resolved and he appears to have had a small vessel ischemic stroke. A CAT scan of his head was negative and there is no evidence of carotid stenosis." (*Id*.) Courts typically afford greatest weight to a treating physician's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010.) In this case, the records indicate that neither of Plaintiff's treating physicians, Dr. O'Leary and Dr. Doyle, assessed any reaching limitations.

Plaintiff's examining physicians, during state agency review and in the course of independent examinations, also did not assess reaching limitations. For instance, Dr. Wildman, a clinical psychologist who examined Plaintiff on December 19, 2011, pursuant to his application for benefits, noted that Plaintiff had reduced motor activity, but never assessed any reaching limitations. (A.R. 429, 435.) On the same day, Dr. Blando, a state agency reviewing physician specializing in physical medicine and rehabilitation, expressly determined that Plaintiff had no manipulative limitations. (A.R. 105.) Limitations on reaching, including overhead reaching, fall squarely under the ambit of manipulative limitations. (A.R. 105) (Manipulative limitations including limitations on "reaching [in] any direction (including overhead.)")

The record shows that Dr. Villaflor, a state agency medical consultant specializing in internal medicine—whose opinion the ALJ relied on to support her RFC determination[7] and Plaintiff relied on to corroborate Dr. Gerson's

---

[7] To the extent that Plaintiff argues that the ALJ's reliance on Dr. Villaflor's opinion was a legal error, the Court finds that it was not. For the reasons, discussed above, the ALJ's RFC determination was based on substantial evidence independent of Dr. Villaflor, and the error—if any—was harmless. *Molina*, 674 F.3d at 1115. ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'") (quoting *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190 (9th Cir. 2004).)

7

assessment—did not determine that Plaintiff was limited to occasional reaching on the left side. (A.R. 31, 128; Joint Stip. 8, ECF No. 13.) At best, Dr. Villaflor's assessment is unclear as to whether Plaintiff was limited to frequent, occasional, or never reaching on the left side. (A.R. 121.) Relying primarily on the opinions of Dr. Wildman and Dr. Gerson, Dr. Villaflor opined that Plaintiff was "limited to shoulder level" reaching, limited as to "[l]eft in front and/or lateral[]" reaching, and limited as to "[l]eft [o]verhead" reaching. (*Id.*)

Following Plaintiff's second stroke, in December 2012, Dr. Aberasturi, a clinical psychologist specializing in neuropsychology, prepared a psychological/neuropsychological report for the purpose of treatment. (A.R. 511, 528.) Relying on Dr. Wildman's examination from the previous year, Dr. Aberasturi noted that though Plaintiff "had some left hemiparesis on the first stroke," (1) he said "his motor ability is doing better since his stroke," (2) he "did not neglect any hand," and (3) he "feels like his left hand is stronger than the right." (A.R. 515.) Plaintiff's results from motor, sensory, and tactile tests were also "in the average range," and showed "good dexterity." (A.R. 521.) Notably, Dr. Aberasturi's report indicated that Plaintiff "did not show a distinct pattern suggesting a weakness on one side." (A.R. 522.) Plaintiff's Sensory Motor Battery test was also normal and showed no impairment. (*Id.*) In light of this evidence, Dr. Gerson remains the only physician to limit Plaintiff to occasional reaching on the left-side.

### 2. No objective clinical medical evidence support Dr. Gerson's assessment.

Second, the ALJ proceeded to "note no clinical objective findings supportive of a limitation to *occasional* left-sided overhead reaching. [Dr. Gerson] noted very minimal/mild findings related to [Plaintiff's] left-sided symptoms including 4.5/5 strength in the left arm and leg and very mild neurological abnormalities." (A.R.

8

31) (emphasis added.) An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1527(c)(2); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (finding that an ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation.")

When Plaintiff saw his cardiologist after the first stroke, Dr. O'Leary noted that Plaintiff "had some significant leg and left hand weakness as well as some slurred speech and blurred vision with a blood pressure of 220/120 mmHg and did not seek medical care." (A.R. 383.) She ordered a head CT, carotid ultrasound, and secondary studies for hypertension…" (*Id.*) "The CT of the head demonstrated normal scan without evidence of intercranial hemorrhage, mass effect," the carotid ultrasound demonstrated "minimal hemodynamically insignificant atheromatous plaque…with mild bilateral intimal thickening" of the arteries, and the renal ultrasound results were normal. (A.R. 383, 391-98.)

Dr. Gerson was aware that Plaintiff did not seek immediate medical treatment for his alleged stroke and was never hospitalized. (A.R.421) (summary report of Dr. Gerson stating that Plaintiff "did see the cardiologist [Dr. O'Leary] who did not hospitalize him…[Plaintiff] thinks he had an MRI of the brain.") However, Dr. Gerson did not reference the CT scan or ultrasounds in his report. Indeed he fails to cite any objective medical data in support of his limiting assessment as to occasional reaching on the left side. "The incongruity between [the physician's ultimate conclusions] and [his] medical records provide an additional specific and legitimate reason for rejecting the [examining physician's] opinion of [Plaintiff's] limitations." *Tommasetti v. Astrue*, 533 F.3d 1035, 1037 (9th Cir. 2008.) An ALJ may properly reject a physician's opinions where the physician's conclusions do not "mesh" with the patient's objective data or history. *Id.* at 1041 (finding that the incongruity between the limitations listed by the physician—which lacked support in the

9

patient's medical records—provided a specific and legitimate reason for rejecting that physician's opinion of the patient's limitations); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted physician's limitations as "not supported by any findings".) In this case, the ALJ properly found that Dr. Gerson's assessment did not "mesh" with the objective data and lacked support in Plaintiff's medical records.

The Court also finds that Dr. Gerson's report is inconsistent in limiting Plaintiff to only occasional reaching on his left-side after (1) implying that Plaintiff's left-side weaknesses are minor and improving, (2) explicitly stating that Plaintiff denies any pain with a full range of motion, and (3) explicitly stating that Plaintiff was able to move and rotate both arms fully overhead without any distress. (A.R. 421-26.)

### 3. **Dr. Gerson's assessment is inconsistent with record evidence including Plaintiff's own testimony about his limitations.**

Third, Plaintiff's own testimony supports the ALJ's RFC determination and undermines Dr. Gerson's assessment. As previously discussed, no objective medical data supported Dr. Gerson's assessment of limited left-sided reaching. Moreover, regular progress notes from Plaintiff's treating physicians (dating from the onset of his first stroke) consistently stated that Plaintiff had no problems with his extremities, no muscle aches, and no muscle weakness. (A.R. 439, 442, 468, 472, 485.)

In function reports dated June 12 and June 29, 2011, respectively, Plaintiff and his wife both indicated that the stroke had no effect on his reaching. (A.R. 246, 262.) The ALJ considered the statements from Plaintiff's wife "as an 'other source' that may provide special knowledge and/or insight into the severity of the impairment(s) and function as explained in SSR 06-03p." (A.R. 32.) During the

hearing, the ALJ questioned Plaintiff about his "physical limitations," and specifically asked "[d]id your doctor restrict you at all?" (A.R.74-75.) Plaintiff responded "[n]o" and specifically denied that any limitations were placed on his sitting, standing, lifting or carrying. (*Id.*)

Where the ALJ has properly considered all of the limitations for which there is record support, the ALJ's RFC determination will not be overturned so long as the ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005.) Based on its review of the record and applicable law, the Court finds that the ALJ applied the correct legal standard and her RFC determination is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 08, 2015

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE